1  Ashley C. Nikkel, NSBN 12838
   PARSONS BEHLE & LATIMER
2  50 W. Liberty Street, Suite 750
   Reno, Nevada 89501
3  (775) 323.1601
   anikkel@parsonsbehle.com
4  -and-
   Alexandra Hodson, ISBN 10631
5  *Pro Hac Vice Forthcoming*
   Chelsea Hintze, ISBN 12453
6  *Pro Hac Vice Forthcoming*
   PARSONS BEHLE & LATIMER
7  800 W. Main Street, Suite 1300
   Boise, Idaho 83702
8  (208) 562-4900
   ahodson@parsonsbehle.com
9  chintze@parsonsbehle.com

10  Attorneys for Plaintiffs

11              **UNITED STATES DISTRICT COURT**

12                 **DISTRICT OF NEVADA**

13  TRUE LASH HOLDING COMPANY, LLC,
    a Nevada limited liability company; TRUE          Case No.: _____
14  LASH SUPPLIES, LLC, a Nevada limited
    liability company; TRUE LASH BOCA
15  PARK, LLC, a Nevada limited liability
    company; TRUE LASH CENTENNIAL,
16  LLC, a Nevada limited liability company;
    TRUE LASH SCOTTSDALE, LLC, a
17  Nevada limited liability company; TRUE
    LASH ST. ROSE, LLC, a Nevada limited
18  liability company; TRUE LASH CLASS,
    LLC, a Nevada limited liability company; and
19  TRUE LASH FRANCHISE, LLC, a Nevada
    limited liability company,
20
               Plaintiffs,
21
          v.                                          **COMPLAINT AND DEMAND FOR**
22                                                    **JURY TRIAL**
    SHAUNA GARDNER, an individual; SASSY
23  LASH SUPPLIES LLC, a Nevada limited
    liability company; SASSY LASHES, a
24  Nevada corporation; SASSY LASH CLASS,
    a Nevada corporation; and LIVBAY LASH, a
25  Nevada corporation,
26               Defendants.
27
28       Plaintiffs True Lash Holding Company, LLC, True Lash Supplies, LLC, True Lash Boca

PARSONS
BEHLE &
LATIMER

Park, LLC, True Lash Centennial, LLC, True Lash Scottsdale, LLC, True Lash St. Rose, LLC, True Lash Class, LLC, and True Lash Franchise, LLC (collectively, "True Lash" or "Plaintiffs") by and through their counsel of record, Parsons Behle & Latimer, submit this Complaint against Defendants Shauna Gardner, Sassy Lash Supplies, LLC, Sassy Lashes corporation, Sassy Lash Class corporation, and LivBay Lash corporation (each a "Defendant" and collectively, "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment seeking a determination of non-infringement and ownership of trademarks, which action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. This action also seeks indemnification and damages for breach of contract, which claims may be heard by this Court under 28 U.S.C. § 1367.

2.      Specifically, this action seeks a determination that Plaintiffs have not infringed but in fact own, and have the exclusive right to use, license, and otherwise enjoy their rights in, the trademarks LIVBAY and *LivBay LASH* (the "LIVBAY Marks") pursuant to several Asset Purchase Agreements and a Stock Transfer Agreement executed in July 2024.

3.      This action also seeks indemnification and damages for Defendants' breach of contract, which cause of action is so related to Plaintiffs' declaratory judgment claim that it forms part of the same case or controversy under Article III of the United States Constitution.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff True Lash Holding Company, LLC, is a Nevada limited liability company with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

5.      Plaintiff True Lash Supplies, LLC, is a Nevada limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

6.      Plaintiff True Lash Boca Park, LLC, is a Nevada limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

7. Plaintiff True Lash Centennial, LLC, is a Nevada limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

8. Plaintiff True Lash Scottsdale, LLC, is an Arizona limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 300 W. Clarendon Avenue, Suite 240, Phoenix, Arizona 85013.

9. Plaintiff True Lash St. Rose, LLC, is a Nevada limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

10. Plaintiff True Lash Class, LLC, is a Nevada limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

11. Plaintiff True Lash Franchise, LLC, is a Nevada limited liability company and a subsidiary of True Lash Holding Company, LLC, with its principal place of business at 365 Pilot Road, Suite B, Las Vegas, Nevada 89119.

12. Upon information and belief, Defendant Shauna Gardner is an individual who at all times relevant hereto was a resident of the state of Nevada.

13. Upon information and belief, Defendant Sassy Lash Supplies LLC, was a Nevada limited liability with its principal place of business at 365 Pilot Road, Suite C, Las Vegas Nevada 89119. The entity existed from on or around May 2018 until on or around May 2025, at which time it was dissolved.

14. Upon information and belief, Defendant Sassy Lashes was a Nevada corporation with its principal place of business at 365 Pilot Road, Suite C, Las Vegas Nevada 89119. The entity existed from on or around October 2015 until on or around October 2024, at which time it was dissolved.

15. Upon information and belief, Defendant Sassy Lash Class was a Nevada corporation with its principal place of business at 365 Pilot Road, Suite C, Las Vegas Nevada 89119. The entity existed from on or around May 2018 until on or around May 2024, at which

PARSONS
BEHLE &
LATIMER

1   time it was dissolved.

2       16.     Upon information and belief, Defendant LivBay Lash was a Nevada corporation

3   with its principal place of business at 365 Pilot Road, Suite C, Las Vegas Nevada 89119. The

4   entity existed from on or around January 2020 until on or around January 2025, at which time it

5   was dissolved.

6       17.     This Court has subject-matter jurisdiction over this action, which arises under the

7   Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, under the Federal Declaratory Judgment Act, 28 U.S.C. §

8   2201, and under 28 U.S.C. § 1367.

9       18.     This Court has personal jurisdiction over Defendants because they have purposely

10  availed themselves of the privileges and benefits of the laws of the state of Nevada and conducted

11  business within this state. The Court's exercise of personal jurisdiction over Defendants is

12  consistent with the Constitutions of the United States and the state of Nevada.

13      19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)–(c).

14                              **FACTUAL BACKGROUND**

15              ***Defendant Gardner Organizes and Operates Defendant Entities***

16      20.     Upon information and belief, Defendant Gardner founded Defendant Sassy Lashes

17  corporation ("Sassy Lashes") in or around October 2015 for the purpose of providing eyelash

18  extension services in brick-and-mortar salons primarily located in Nevada.

19      21.     Upon information and belief, Defendant Gardner founded Defendant Sassy Lash

20  Supplies LLC ("Sassy Lash Supplies") in or around May 2018 for the purpose of selling eyelash

21  extension products and related accessories.

22      22.     Upon information and belief, Defendant Gardner founded Defendant Sassy Lash

23  Class corporation ("Sassy Lash Class") in or around May 2018 for the purpose of providing

24  eyelash extension courses.

25      23.     Upon information and belief, Defendant Gardner founded Defendant LivBay Lash

26  corporation ("LivBay Lash") in or around January 2020 for the purpose of providing eyelash

27  extension products and related accessories and services.

28      24.     Upon information and belief, Defendant Gardner also founded LivBay Franchises

PARSONS
BEHLE &
LATIMER

4

corporation ("LivBay Franchises") in or around April 2021 for the purpose of franchising the LivBay business concept and licensing the accompanying LIVBAY Marks.

25.    Upon information and belief, Defendant Gardner operated Sassy Lashes, Sassy Lash Supplies, Sassy Lash Class, LivBay Lash (the "Defendant Entities"), and LivBay Franchises until on or around July 31, 2024, and she had the legal authority to execute documents on behalf of each entity until at least that date.

### *Defendant Gardner Improperly Registers the LIVBAY Marks*

26.    Upon information and belief, from 2019 to 2021, Defendant Gardner submitted several applications to the United States Patent and Trademark Office to register the LIVBAY Marks.

27.    Defendant Gardner's trademark applications were eventually approved, and the LIVBAY Marks were registered for various goods and services, including the following:

a.    **LIVBAY** and *LivBay* LASH covering "Online retail store services featuring eyelash extensions, artificial eyelashes, artificial eyelash tweezers, cases for tweezers, adhesives for affixing artificial eyelashes, cosmetic masks, and non-medicated eyelash preparations, namely, eye mist" (Reg. Nos. 6160006 and 6876417);

b.    **LIVBAY** and *LivBay* LASH covering "Eyelash extensions; artificial eyelashes; cosmetic preparations for eyelashes; adhesives for affixing artificial eyelashes; cosmetic masks; non-medicated eyelash preparations, namely, eye mist" (Reg. Nos. 6223330 and 6876421);

c.    **LIVBAY** and *LivBay* LASH covering "Artificial eyelash tweezers; cases for tweezers" (Reg. Nos. 6212654 and 6876420);

d.    **LIVBAY** and *LivBay* LASH covering "Beauty services, namely, eyelash extension services" (Reg. Nos. 6160008 and 6876415); and

e.    **LIVBAY** and *LivBay* LASH covering "Online and in-person education and training services in the field of artificial eyelashes and eyelash extensions; organizing and conducting educational workshops in the field of artificial eyelashes and eyelash extensions, specifically providing instruction on application,

maintenance, and removal of artificial eyelashes and eyelash extensions" (Reg. Nos. 6160007 and 6876416)

28.    Although Defendant Gardner applied for the LIVBAY Marks with herself listed as the owner, upon information and belief, the LIVBAY Marks were never used by Defendant Gardner personally nor did she license them or control the nature and quality of the goods and services provided under them.

29.    Upon information and belief, the true owners of the LIVBAY Marks were the Defendant Entities and LivBay Franchises, which used the Marks and exercised control over the nature and quality of the goods and services provided under them.

30.    Because Defendant Gardner was never the proper owner of the LIVBAY Marks, the registrations for the Marks are void ab initio.

### *Plaintiffs Acquire Defendant Entities' Assets, Including the LIVBAY Marks*

31.    In or around February 2023, Defendant Entities borrowed a collective principal amount of $3,000,000 (the "Loan") from three lenders (the "Lenders").

32.    Defendant Gardner executed several agreements on behalf of herself and Defendant Entities in furtherance of obtaining the Loan, including a Secured Promissory Note, Security Agreement, Guaranty, and Pledge Agreement. *See* Exhibits A–D.

33.    As reflected in the Security Agreement and Guaranty, most of Defendant Entities' business assets and some of Defendant Gardner's personal assets were used as collateral for the Loan. *See* Exs. B–C.

34.    Notably, pursuant to the Security Agreement executed by Defendant Entities, the collateral for the Loan explicitly included "General Intangibles," owned by Defendant Entities, which term is defined in pertinent part as, "all general intangibles . . . software and all other intangible personal property of every kind and nature . . . including patents, trademarks, trade names, service marks, copyrights, patent applications, trademark or service mark applications, copyright applications and goodwill, trade secrets, licenses, franchises, rights under . . . ." *See* Exhibit B at Sections 2(a) and 3(c).

35.    Pursuant to the Guaranty executed by Defendant Gardner, she agreed that in the

PARSONS
BEHLE &
LATIMER

event of default on the Loan, she would cooperate fully in relinquishing control of all of Defendant Entities' assets, including the General Intangibles listed above. *See* Exhibit C at Section 7.

36.    The Loan was set to mature on June 1, 2023 with a payment of $3,720,000 due by that date. However, Defendant Gardner was given an option to extend the maturity date to July 1, 2023, for a fee. She executed that option.

37.    On or before the extended maturity date of July 1, 2023, Defendant Gardner defaulted on the Loan as a result of nonpayment. At that time, she owed nearly $4,000,000 to Lenders.

38.    In lieu of foreclosing on the Loan and Defendant Gardner's personal assets after the default, Lenders created several entities, including Plaintiffs, for the purpose of acquiring Defendant Entities' assets through the execution of various Asset Purchase Agreements (the "APAs") and acquiring the stock in LivBay Franchises through a Stock Transfer Agreement. *See* Exhibits E–K.

39.    Defendant Gardner signed each of the APAs on behalf of the entity Defendant involved, and she signed the Stock Transfer Agreement individually as the owner of the stock in LivBay Franchises.

40.    Notably, Defendant Gardner also executed a Waiver and Release on July 31, 2024 ("Release"), in which she acknowledged that (i) she had a reasonable opportunity to review the Release and APAs with her own legal counsel; (ii) there had been full disclosure to her of all facts material to the Release and the APAs; and (iii) she was not under duress or coercion to enter into the Release, the APAs, or any of the other documents the Parties entered into at that time to effectuate that transfer of assets to Plaintiffs. *See* Exhibit L.

41.    Included with the transfer of assets to Plaintiffs under the APAs were "all of the assets necessary for Buyer to conduct the Business in the manner in which it ha[d] been conducted by Seller immediately prior to" the date of the transfer **and** "all assets used by Seller in its conduct

1  of the Business," which assets include the intellectual property assets used by Defendant Entities.[1]

2  *See* Exs. E–J at Section 4.8

3      42.    The assets used by Defendant Entities in the conduct of their business immediately

4  prior to the date of transfer included, but were not limited to, the LIVBAY Marks, which upon

5  information and belief were used by Defendant Entities prolifically and had become valuable

6  brands for those entities. Indeed, the transfer of the LIVBAY Marks constituted a material aspect

7  of the Parties' bargain in executing the APAs.

8      43.    Under the APAs, Defendant Entities also agreed to execute and deliver any further

9  instruments, deeds, assignments or assurances reasonably necessary or desirable to consummate

10  the acquisition of the assets or to carry out the purpose and intent of the APAs at or after the

11  Closing Date, and to otherwise do all other things reasonably necessary to consummate the

12  acquisition and to carry out the purpose and intent of the APAs. *See id.* at Section 2.6.

13      44.    In addition, Defendant Entities agreed to hold Plaintiffs harmless from and against

14  any and all "Losses" arising from or resulting from: (a) any inaccuracy of any representation or

15  warranty made by Defendant Entities in the APAs or other agreement referenced therein; and (b)

16  any breach of any of the covenants or agreements made by Defendant Entities in the APAs or in

17  any agreement referenced therein. *See id.* at Section 7.1.

18      45.    Losses is defined in the APAs to include any amounts paid in settlement, damages,

19  liabilities, obligations, judgments, settlements, fines and reasonable out-of-pocket costs and

20  expenses, including reasonable attorney's fees other professionals' and experts' fees, costs of

21  investigation and court costs. *See id.* at Exhibit A thereto, "Definitions."

22      46.    With the APAs, then, Defendant Entities transferred to Plaintiffs all right, title, and

23  interest in and to the LIVBAY Marks and agreed to indemnify and hold Plaintiffs harmless from

24  and against any and all Losses, including damages and attorneys' fees, resulting from any

---

[1] Some of the APAs specifically referenced the transfer of intellectual property while others generally referenced the transfer of all assets used by the seller in the conduct of its business. *See* Exhibits A & D at Section 2.1(a)(ii). In either case, the APAs contemplated, and the Parties to them understood, that the transfer of the business's intellectual property assets was material to the Parties' bargain. Those assets included the LIVBAY Marks.

PARSONS BEHLE & LATIMER

1    inaccuracy of any representation or warranty made by them and from any breach of the covenants

2    or agreements made by them in the APAs.

3    ***With Defendants' Assistance, Plaintiffs Exercise Control of the LivBay Websites and***

4    ***Begin Exclusive Use of the LIVBAY Marks***

5    47.    Shortly after the execution of the APAs and with Defendants' assistance, Plaintiffs

6    took control of the LivBay Supplies website found at https://livbaysupplies.com, which upon

7    information and belief, was formerly operated by Defendant Sassy Lash Supplies and used in

8    furtherance of its business. Plaintiffs also took control of the LivBay Lash website found at

9    https://www.livbaylash.com, which upon information and belief, was formerly operated by

10   Defendant Sassy Lashes and used in furtherance of its business. In addition, Plaintiffs took control

11   of the LivBay Lash Class website found at https://livbaylashclass.com, which upon information

12   and belief, was formerly operated by Defendant Sassy Lash Class in furtherance of its business.

13   The LivBay Lash Supplies, LivBay Lash, and LivBay Lash Class websites are referred to

14   collectively herein as "the LivBay Websites."

15   48.    Since August 1, 2024, Plaintiffs alone have operated the LivBay Websites, which

16   prominently depict the LIVBAY Marks. Plaintiffs have also exclusively used the LIVBAY Marks

17   in United States commerce to provide, among other goods and services, lash extension and

18   eyebrow lamination services and to sell related goods, including false eyelashes and eyelash and

19   eyebrow accessories.

20   49.    Examples of Plaintiffs' use of the LIVBAY Marks as seen on the LivBay Websites

21   are shown in the screenshots below.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /







LivBay Magnetic Tweezer Case

$22.00   $14.00   Sale

Pay over time for orders over $35.00 with **ShopPay**
Learn more

Color

Powder Blue Boo

Pink Livbay Sorbet    Black Lash

Quantity

−   1   +

ADD TO CART

PARSONS
BEHLE &
LATIMER



PARSONS
BEHLE &
LATIMER



LivBay Straight Up Brow Lamination Kit

★★★★★ (3)

$61.00   $51.85   Sale

Pay in 4 interest-free installments of $12.96 with shop Pay. Learn more





*LivBay*
LASH

Home     Services     Contact                          BOOK NOW

# Our Services



**Classic Full Set $120**

Enhance your natural beauty with our Classic Full Set. The classic set is applied lash by lash for a timeless look that defines and flatters your eyes.



**Mega Full Set $240**

Mega Volume Lash Set is the epitome of lash luxury. Meticulously crafted with ultra-fine extensions to create a dramatic, full-bodied look that exudes glamour and confidence.



**Mixed Full Set $160**

Experience the best of both worlds with our Mixed Full Lash Set. This blends sclassic and volume techniques for a customized, textured look that enhances your natural beauty with added depth and dimension.



**Volume Full Set $205**

The Volume Full Set, where multiple lightweight extensions are expertly crafted to create a lush, voluminous effect that commands attention.



**Wet/Wispy $180**

Enjoy a mixture of closed fans with different lengths creating a spiky but natural look!



**Brow Lamination $75**

Unlock the full potential of your brows with Brow Lamination. We sculpt and smooth your brows into the perfect shape and symmetry, creating a polished, groomed look that lasts for weeks.

BOOK NOW



**Lash Fills $55-$115**

Price varies depending on the type of fill. One of the biggest misconceptions is thinking "go as long as you can until your next lash appointment". Lash fills help save you money and time! Not only does it cost less but it takes less time.

BOOK NOW



**Touch Up $50-$60**

Price varies depending on the type of touch up. For those times when your retention is bomb and you just need a touch up before your big week!

BOOK NOW



**Weekly Fills $45-$55**

This is our most popular service! Scheduling quick 30 minute weekly fills means your lashes always look perfect and you spend less time in the salon. Price varies depending on the style of lashes.

BOOK NOW



**Lash Lift $75**

A Lash Lift enhances your natural lashes, giving them a lifted, fuller look that lasts 6-8 weeks. The treatment gently curls and defines lashes, offering a low-maintenance alternative to mascara or extensions.

BOOK NOW

Privacy Policy                          © 2024 LivBay Lash, All Rights Reserved.

50.     Defendants have assisted with and acquiesced in Plaintiffs' prolific and continuous use of the LIVBAY Marks for more than a year with full knowledge of Plaintiffs' use of and claim of ownership in the marks. Through their use, Plaintiffs have established significant common law rights in the LIVBAY Marks.

51.     Indeed, Defendant Gardner has on multiple occasions acknowledged in writing that Plaintiffs own the LIVBAY Marks and that neither she nor Defendant Entities have a right to use them any longer. *See* Exhibits M–N.

52.     By way of example, in February 2025, Defendant Gardner emailed Plaintiffs asking

1  for permission to file a trademark application for the term BAYLIVI, as she believed there could

2  be a conflict with her BAYLIVI mark and the LIVBAY Marks, which she acknowledged Plaintiffs

3  "now own." *See* Ex. M at p. 2. Plaintiffs declined her request, stating, "[W]e've analyzed the name

4  Baylivi compared to Livbay and we are feeling like it is similar enough that it could cause

5  confusion . . . ." *See id.* at p. 1. As a result, Plaintiffs asked Defendant Gardner to use a different

6  mark. *Id.*

7          53.      Yet, despite explicitly recognizing Plaintiffs' rights in the LIVBAY Marks,

8  Defendant Gardner has recently begun claiming to own the Marks and demanding further

9  compensation from Plaintiffs for the rights in them.

10         54.      Notably, however, she has also conceded that she has not licensed the Marks to any

11 third parties. Indeed, she stated as much in a video posted to the social media platform Instagram

12 on or around October 15, 2025. The video can be found at the following link:

13 https://www.instagram.com/reel/DPz8_jqCdIP/?igsh=OWQwdWdxeXl2eDhr.[2]

14         55.      In light of her claim of ownership, she has effectively admitted to allowing

15 Defendant Entities to use the LIVBAY Marks for years without a license.

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27

28

---

[2] The hyperlink here is included for reference under LR IA 7-3. The video has been preserved and will be disclosed in discovery.

PARSONS
BEHLE &
LATIMER

56.    Also of note in the Instagram post is what appears to be Defendant Gardner's claim that, "*The only part of Livbay that I currently have is the [t]rademark.*"[3] (Emphasis added.) A screenshot of the post with the comment is provided below for reference.



57.    With this statement, Defendant Gardner appears to refer to Defendant Entities and LivBay Franchises colloquially as "Livbay," as those were the entities that used the Marks. She also seems to acknowledge Plaintiffs' ownership rights in the LivBay enterprise, and yet apparently believes they acquired all of the entities' assets except arguably the most important ones—the LIVBAY Marks—which are closely tied to the goodwill of the entities and are necessary for Plaintiffs to operate the companies successfully. Such an assertion is nothing short of absurd.

58.    Indeed, the APAs and Stock Purchase Agreement collectively transferred *all assets* used by Defendant Entities to Plaintiffs and gave Plaintiffs the right to use, license, and otherwise enjoy their rights in the LIVBAY Marks. Nothing in the APAs excludes the Marks from Plaintiffs'

---

[3] As Defendant Gardner explains in the video and in what appears to be her comment to the video, she is now operating under the name Olivor Lash, which entity is associated with the poster of this comment.

PARSONS
BEHLE &
LATIMER

acquisition of the LivBay enterprise. This, along with Defendant Gardner's acquiescence in Plaintiffs' open, exclusive, and continuous use of the Marks since August 2024, directly contradicts her current claim of ownership in the Marks.

59.     For these reasons, even if Defendant Gardner were ever the true owner of the Marks—and she was not—she has lost her rights in them through naked licensing or has otherwise abandoned them through non-use.

***Plaintiffs Hire Defendant Gardner to Help Transition the LivBay Assets; She Refuses to Formally Assign the LIVBAY Marks, and Threatens to Shut Down Plaintiffs' Operations If They Continue Using the Marks***

60.     At the same time the APAs were executed, Plaintiff True Lash Supplies, LLC executed an employment agreement with Defendant Gardner on July 31, 2024 (the "Employment Agreement"). The Employment Agreement had a term of August 1, 2024 to July 31, 2025 (the "Term"). *See* Exhibit O.

61.     True Lash Supplies employed Defendant Gardner not only to help her, as she was experiencing financial difficulties at the time, but also so that she could assist with the transfer of assets Plaintiffs acquired under the APAs. Given that she owned Defendant Entities and had an intimate knowledge of the assets Plaintiffs had acquired from them, it was prudent for Plaintiffs to cooperate with her toward that goal.

62.     Pursuant to the Employment Agreement, True Lash Supplies agreed to pay Defendant Gardner $420,000 in exchange for her fulfilling the role of Chief Marketing Officer for the business. *See id.*

63.     During Defendant Gardner's tenure with the company, it became apparent to Plaintiffs that the LIVBAY Marks acquired through the APAs had been registered in Defendant Gardner's personal name instead of in the name of the actual owner(s) of the marks, which upon information and belief, were Defendant Entities. Accordingly, in or around February 2025, Plaintiffs requested that Defendant Gardner execute an assignment agreement so they could record the trademark ownership transfer of the LIVBAY Marks with the United States Patent and Trademark Office. Defendant Gardner originally indicated that she would execute the required document but subsequently failed to do so.

64. Also, in or around February 2025, True Lash Supplies recognized that it would not be able to extend employment to her beyond the Term and allowed Defendant Gardner to simply stop reporting to work so she could use the remaining time in the Term to find alternative sources of income. The company nonetheless fulfilled its end of the bargain under the Employment Agreement and continued to pay her through the end of the Term.

65. With the maintained hope of resolving outstanding matters amicably, Plaintiffs again asked Defendant Gardner in or around May 2025 to execute an assignment agreement concerning the LIVBAY Marks. However, she once again failed to do so.

66. Though the Parties' relationship had unfortunately deteriorated by the time the Term concluded, Plaintiffs continued to try to resolve the trademark assignment matter with Defendant Gardner from July through September 2025. Yet, while she had originally acknowledged numerous times that the LIVBAY Marks were transferred through the APAs, she has now taken a 180 degree turn and adopted the outrageous stance that she never transferred the Marks and that Plaintiffs are using them without her permission. She has also demanded further compensation from Plaintiffs to obtain rights the Marks (that they already have). In addition, she has threatened to interfere with Plaintiffs' business operations by reporting her ownership of the trademark registrations to the platforms Plaintiffs rely on heavily, which would effectively shut down or otherwise significantly hinder their operations.

67. After months of attempting to resolve this dispute amicably and without resorting to litigation, Plaintiffs have been forced to file this action to enforce their rights under the APAs and Stock Transfer Agreement and put their claim of ownership in the LIVBAY Marks to rest.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of Plaintiffs' Ownership and Non-Infringement of the LIVBAY Marks, and Invalidity and Cancellation of Defendant Gardner's Trademark Registrations)

68. Plaintiffs incorporate by reference each of the allegations set forth above, as if fully set forth herein.

69. Upon information and belief, Defendant Entities knew that the LIVBAY Marks were registered in Defendant Gardner's personal name at the time they executed the APAs, and

PARSONS
BEHLE &
LATIMER

Defendant Gardner, as the owner of Defendant Entities, also knew of this fact.

70.     Upon information and belief, Defendants did not disclose the fact that the LIVBAY Marks were registered in Defendant Gardner's name when the APAs were executed.

71.     Nonetheless, Defendant Entities were the proper owners of the LIVBAY Marks at the time they were registered, as the Entities controlled the nature and quality of the goods and services provided under the Marks before Plaintiffs acquired them through the APAs.

72.     Defendant Entities transferred the rights in the LIVBAY Marks to Plaintiffs through the APAs, and Defendants, including Defendant Gardner, have knowingly acquiesced in Plaintiffs' exclusive and continuous use of, and open and notorious claim of ownership in, the LIVBAY Marks for more than a year leading up to the filing of this Complaint.

73.     Now, Defendant Gardner is claiming ownership of the LIVBAY Marks, alleging that Plaintiffs are committing infringement, demanding additional compensation from Plaintiffs to assign the Marks, and threatening to shut down Plaintiffs' business operations if they do not comply with her demands.

74.     Plaintiffs will be damaged by the continued registration of the LIVBAY Marks because the registrations give Defendant Gardner a prima facie exclusive right to use the Marks and allow her to improperly wield the registrations against Plaintiffs, despite that Plaintiffs are the true owners of the Marks pursuant to the APAs.

75.     There exists an immediate, real, and justiciable controversy between Plaintiffs and Defendants as to who owns the LIVBAY Marks, whether Plaintiffs' use of the Marks infringes Defendant Gardner's alleged rights in them, and whether the trademark registrations for the Marks are valid, as they were registered in the improper owner's name and the Marks have otherwise been abandoned.

76.     A judicial determination regarding these issues is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the LIVBAY Marks.

77.     Accordingly, Plaintiffs request that the Court declare the following: (i) Plaintiffs own the LIVBAY Marks; (ii) Plaintiffs are not committing infringement with their continued use of the Marks; (iii) Plaintiffs have established valid common law rights in the Marks through their

continuous and exclusive use of the Marks in commerce since August 2024; and (iv) Defendant Gardner's U.S. Trademark Registration Nos. 6160006, 6876417, 6223330, 6876421, 6212654, 6876420, 6160008, 6876415, 6160007, and 6876416 are invalid and cancelled, as they are void ab initio and/or the marks have been abandoned through naked licensing or non-use.

## SECOND CAUSE OF ACTION

### (Breach of Contract – APAs)

78.     Plaintiffs incorporate by reference each of the allegations set forth above, as if fully set forth herein.

79.     Plaintiffs entered into binding and enforceable contracts with Defendant Entities, as set out in the APAs.

80.     Defendant Entities breached the material terms of the APAs by, inter alia, purporting to transfer rights in the LIVBAY Marks without disclosing that the Marks were registered in the name of Defendant Gardner and failing to execute documents necessary for Plaintiffs to fully enjoy their rights in the Marks.

81.     True Lash has suffered harm as a result of Defendants' breach of the APAs and is entitled to recover monetary damages, the full extent, nature, and amount of which will be established at trial.

## THIRD CAUSE OF ACTION

### (Indemnification from Defendant Entities)

82.     Plaintiffs incorporate by reference each of the allegations set forth above, as if fully set forth herein.

83.     As discussed, *supra*, Defendant Entities purported to transfer the LIVBAY Marks to Plaintiffs through the APAs without disclosing that the Marks were registered in the name of Defendant Gardner.

84.     The trademark registrations purportedly owned by Defendant Gardner serve as a significant barrier to Plaintiffs' continued use of the Marks, as those registrations give Defendant Gardner a prima facie exclusive right to use the Marks, despite that Plaintiffs are the true owners of the Marks pursuant to the APAs.

PARSONS
BEHLE &
LATIMER

85.    In the APAs, Defendant Entities also agreed to indemnify and hold Plaintiffs harmless from and against any and all losses, including damages and attorneys' fees, resulting from any inaccuracy of any representation or warranty made by them and from any breach of the covenants or agreements made by them in the APAs.

86.    Defendant Entities' misrepresentations concerning their ownership of the LIVBAY Marks and their purported transfer of the Marks to Plaintiffs under the APAs, despite Defendant Gardner's registrations for the Marks, require them to defend and hold Plaintiffs harmless from all losses, including damages and attorneys' fees, incurred in potentially losing a significant benefit of their bargain under the APAs (i.e., ownership of the LIVBAY Marks), and in bringing this action to determine their rights in the Marks and cancel the registrations improperly filed in the name of Defendant Gardner.

87.    Plaintiffs have suffered harm as a result of Defendants' misrepresentations concerning the LIVBAY Marks and are entitled to indemnification from Defendant Entities pursuant to the APAs.

## ATTORNEYS' FEES AND COSTS

88.    Plaintiffs have been required to retain the services of an attorney to bring this suit and are entitled to recover their costs and reasonable attorneys' fees incurred in the defense of this action pursuant to the APAs and any other applicable rule, statute, or law.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiffs respectfully request that this Court enter an Order granting it the following relief:

1.    A judgment against Defendants, including an Order declaring that

    a.    Plaintiffs have not infringed and do not infringe the LIVBAY Marks;

    b.    Plaintiffs acquired the LIVBAY Marks under the APAs;

    c.    Plaintiffs have established common law rights in the LIVBAY Marks through their continuous and exclusive use of the Marks in commerce since August 2024; and

    d.    Defendant Gardner's registrations for the LIVBAY Marks in Reg. Nos.

PARSONS
BEHLE &
LATIMER

6160006, 6876417, 6223330, 6876421, 6212654, 6876420, 6160008, 6876415, 6160007, and 6876416 are invalid and cancelled, as they are void ab initio and/or the Marks have been abandoned;

2.      An award of compensatory damages in an amount to be proven at trial;

3.      An Order requiring each Defendant Entity that is a party to an APA to indemnify Plaintiffs for their claims against the remaining Defendants pursuant to the APAs;

4.      For reasonable attorneys' fees and costs incurred as a result of seeking the relief requested herein, as may be allowed by law; and

5.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury of all issues triable of right to a jury and raised by the pleadings in this action.

DATED this 21st day of October 2025.            PARSONS BEHLE & LATIMER

_/s/ Ashley C. Nikkel_
Ashley C. Nikkel, NSBN 12838
PARSONS BEHLE & LATIMER
50 W. Liberty Street, Suite 750
Reno, Nevada  89501
(775) 323.1601
anikkel@parsonsbehle.com
-and-
Alexandra Hodson, ISBN 10631
*Pro Hac Vice Forthcoming*
Chelsea Hintze, ISBN 12453
*Pro Hac Vice Forthcoming*
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, Idaho 83702
(208) 562-4900
ahodson@parsonsbehle.com
chintze@parsonsbehle.com

*Attorneys for Plaintiffs*

PARSONS
BEHLE &
LATIMER

21

1

## INDEX OF EXHIBITS

2

| **Exhibit** | **Description** | **Pages** |
|---|---|---|
| A | Secured Promissory Note | 9 |
| B | Security Agreement | 15 |
| C | Guaranty | 4 |
| D | Pledge Agreement | 6 |
| E | Asset Purchase Agreement (Sassy Lash Class – True Lash Class) | 12 |
| F | Asset Purchase Agreement (Sassy Lashes - True Lash Boca Park) | 12 |
| G | Asset Purchase Agreement (Sassy Lashes – True Lash Scottsdale) | 12 |
| H | Asset Purchase Agreement (Sassy Lash Supplies - True Lash Supplies) | 12 |
| I | Asset Purchase Agreement (Sassy Lashes - True Lash Centennial) | 12 |
| J | Asset Purchase Agreement (Sassy Lashes - True Lash St. Rose) | 12 |
| K | Stock Transfer Agreement (Shauna Gardner – True Lash Franchise) | 2 |
| L | Release and Waiver | 2 |
| M | Emails from Shauna Gardner | 3 |
| N | Dec 2024 Email from Shauna Gardner | 1 |
| O | Shauna Gardner Employment Agreement | 9 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PARSONS
BEHLE &
LATIMER